# KATZMELINGER

370 LEXINGTON AVENUE, SUITE 1512
NEW YORK, NEW YORK 10017
www.katzmelinger.com


Nicole Grunfeld                                                                    t: 212.460.0047
Katz Melinger PLLC                                                                 f: 212.428.6811
                                                          ndgrunfeld@katzmelinger.com


June 16, 2023

**Via ECF**
The Honorable Cathy L. Waldor
Martin Luther King Building & U.S. Courthouse
50 Walnut Street Room 4015
Newark, NJ 07101

> **Re:**    *San Pedro v. Bergen Recycling Inc.. et al.*
> **Civil Action No. 2:22-cv-821 (KM)(CLW)**

Your Honor:

We are attorneys for Plaintiff Noel Clemente San Pedro, and write jointly with counsel for Defendants Bergen Recycling Inc. and Maria Monteferrario to seek approval of the parties' agreement to settle Plaintiff's claims, which include claims for overtime violations pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a(4) ("NJWHL"); and failure to timely pay wages and misappropriation of tips pursuant to the New Jersey Wage Payment Law ("NJWPL").

Plaintiff and Defendants write to respectfully request that the Court approve the settlement agreement between them, a copy of which is attached hereto as **Exhibit 1**, and allow them to discontinue the matter with prejudice pursuant to Fed. R. Civ. P. 41 (a)(2).

## 1.  Summary of Plaintiff's Claims

Plaintiff was employed by Defendants as a cashier and recycling employee from in or around February 2001 until on or around March 18, 2020. As a cashier and recycling employee, Plaintiff's principal job duties included, *inter alia*, purchasing recyclable materials from customers; weighing recyclable materials; loading recyclable materials into trailers; operating a forklift; answering phone calls; and answering customer inquiries.

From in or around 2001 until in or around July 2018, Plaintiff alleges that he regularly worked six (6) days per week, as follows: Mondays through Fridays from approximately 8:00 AM until approximately 5:00 PM; and Saturdays from approximately 8:00 AM until approximately 3:00 PM, for a total of approximately fifty-two (52) hours worked per week.

From in or around August 2018 until on or around March 18, 2020, Plaintiff alleges that he regularly worked six (6) days per week, as follows: Mondays through Fridays from approximately 7:00 AM until approximately 5:00 PM; and Saturdays from approximately 7:00 AM until approximately 12:00 PM, for a total of approximately fifty-five (55) hours per week.

Although Plaintiff regularly worked in excess of forty (40) hours per week, he alleges that Defendants failed to pay him overtime wages at a rate of 1.5 times his hourly rate of pay for all hours worked in excess of forty (40) per week.  Additionally, Plaintiff alleges that from in or around 2015 until on or around March 18, 2020, Defendants unlawfully misappropriated Plaintiff's tips.

Plaintiff estimates that he is owed approximately $20,531.25 in unpaid overtime wages, plus liquidated damages, interest, the costs of this litigation, and reasonable attorneys' fees. Plaintiff also estimates that he is owed $5,550.00 in damages for misappropriation of tips under the NJWPL.

### 2. Defendants' Position

Defendants deny Plaintiff's allegations as to the number of hours that he worked, and the amount and manner of compensation that he was paid. Defendants allege that Plaintiff worked 8 AM through 5:00 PM on Mondays through Fridays, and from 8:00 AM through 2:30 PM on Saturdays. Defendants further allege that Plaintiff was paid at an hourly rate of $18.75 per hour, rounded up to the nearest dollar; Plaintiff's weekly wages were consistent throughout his employment because he worked the same number of hours. To the extent such consistent wage payment may be deemed a salary, Defendants further allege that Plaintiff was exempt under the executive exemption (29 C.F.R. § 541.100), as he controlled, hired and otherwise had authority over two or more employees at the business. As such, Defendants estimate Plaintiff's unpaid wages ranges from $0 to $8,426.31, depending on the various best- and worst-case assumptions of facts and applicable laws. Defendants further dispute that Defendants withheld any tips – all tips were distributed among the employees, to the exclusion of the management-level employees.

The parties engaged in extensive settlement discussions and agreed to settle Plaintiff's claims for $22,500.00 to be paid to Plaintiff in six monthly payments beginning shortly after the Court's approval of the parties' settlement agreement. The amount agreed upon reflects a mutual desire to reach an amicable resolution in this matter without additional litigation.

As explained in further detail below, the parties respectfully aver that the proposed settlement agreement is fair, reasonable, and equitable.

### The Proposed Settlement Should Be Approved

1.  The Settlement Resolves Bona Fide Disputes and is Fair and Reasonable to Plaintiff

To approve an FLSA settlement agreement in the Third Circuit, the court must determine whether "the compromise reached is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Davis v. Essex Cty.*, 2015 WL 7761062, at *2 (D.N.J. Dec. 1, 2015) (internal

quotations and citations omitted). "In determining whether the compromise resolves a bona fide dispute, the Court must be reassured that the settlement 'reflect[s] a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching,' and the bona fide dispute must be determined to be one over 'factual issues' not 'legal issues such as the statute's coverage or applicability.'" *Brumley v. Camin Cargo Control, Inc.,* 2012 WL 1019337, at *2 (D.N.J. Mar. 26, 2012) (citations omitted). District courts in the Third Circuit typically consider the factors set forth in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir.1975) in determining whether a FLSA settlement is fair and reasonable. *Cruz v. JMC Holdings, Ltd.*, 2019 WL 4745284, at *4 (D.N.J. Sept. 30, 2019). Those factors are: "...(1) the complexity, expense and likely duration of the litigation ...; (2) the reaction of the class to the settlement ...; (3) the stage of the proceedings and the amount of discovery completed ...; (4) the risks of establishing liability ...; (5) the risks of establishing damages ...; (6) the risks of maintaining the class action through the trial ...; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery ...; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation ...." *Id.* (citing *Girsh*, 521 F.2d at 157).

The proposed settlement agreement reflects a reasonable compromise of bona fide disputes regarding Plaintiff's claims, rather than a mere waiver of statutory rights brought about by Defendants' overreaching. Here, there is no doubt that the settlement did not come about because of "overreaching" by Defendants. To the contrary, Plaintiff is represented by competent counsel, and the settlement amount of $22,500.00 results in a recovery to Plaintiff of $14,393.33, after expenses and proposed attorneys' fees. This sum is fair and reasonable given the early stage at which the settlement was reached; the time and costs associated with continued ligation; the risk that Plaintiff would not prevail on all of his claims after a trial; and the fact that Plaintiff will receive the entire settlement amount within six months after the Court's approval of the settlement agreement.

Furthermore, Plaintiff and Defendants engaged in extensive negotiations and gathered and exchanged information relevant to the claims and defenses in this matter; they can therefore accurately assess the strengths and weaknesses of the asserted claims and their respective positions. *Cruz*, 2019 WL 4745284, at *5 (concluding that the parties appreciated the merits of the case because, *inter alia*, the parties engaged in discovery of relevant documents and various arm's-length negotiations). Thus, although Plaintiff and Defendants hold opposing views on the merit and value of Plaintiff's claims, the arm's length bargaining between such represented parties, along with the information shared through discovery, weigh in favor of finding the settlement reasonable.

2.  The Settlement Furthers the Implementation of the FLSA

As further explained above, Plaintiff and Defendants hold opposing views on the merit and value of Plaintiff's claims. Given Defendants' claims that Plaintiff was properly paid for all hours worked, there is a risk to Plaintiff that he will be unable to prevail on any of his claims if a fact finder were to determine that Defendants' defenses are convincing. By reaching a settlement with Defendants, Plaintiff avoids the substantial risk of receiving an unfavorable outcome in this matter. Furthermore, the agreement provides that Plaintiff will receive the entire settlement amount within

six months. Lastly, the proposed settlement agreement between Plaintiff and Defendants is devoid of any provisions that would frustrate the implementation of the FLSA.

   3.   Plaintiff's counsels' fees are reasonable

Plaintiff and his counsel maintain that the proposed amount of attorneys' fees is also fair and reasonable. "[T]he percentage-of-recovery method has been accepted as an established approach to evaluating the award of attorneys' fees in the Third Circuit." *Brumley*, 2012 WL 1019337, at *9. Under the percentage-of-recovery method, fee awards ranging from 19 percent to 45 percent of the settlement fund have been deemed reasonable. *Id.* at *12; *see also, Davis*, 2015 WL 7761062, at *5. Under the proposed agreement, Plaintiff's counsel would recover $910.00[1] as reimbursement for costs and expenses, and $7,196.67 in fees. Under Plaintiff's contingency fee agreement, Plaintiff's counsel is entitled to recover out of Plaintiff's settlement amount fees totaling one-third of any amounts recovered on behalf of Plaintiff, as well as costs and expenses, which is reasonable. *Brumley*, 2012 WL 1019337, at *12 ("Counsel's request for one-third of the settlement fund falls within the range of reasonable allocations in the context of awards granted in other, similar cases").

As set forth herein, Plaintiff's counsel negotiated a highly favorable settlement for Plaintiff, in which Plaintiff's gross recovery is more than the overtime wages claimed by him. Furthermore, Plaintiff avoided the risk of attempting to enforce a judgment against Defendants, if Plaintiff ultimately prevailed in his claims.

Accordingly, Plaintiff and Defendants respectfully request judicial approval of their proposed settlement agreement, and further request permission to submit a stipulation of discontinuance with prejudice consistent with the requirements of Fed. R. Civ. P. 41(1) (a) (ii) as to Defendants.

Respectfully submitted,

By: */s/ Nicole Grunfeld*                        By: */s/ Sean Kwak*
   Nicole Grunfeld, Esq.                             Sean S. Kwak, Esq.
   Katz Melinger PLLC                                Kim, Cho & Lim, LLC
   370 Lexington Avenue, Suite 1512                  460 Bergen Boulevard, Suite 305
   New York, New York 10017                          Palisades Park, New Jersey 07650
   T: (212) 460-0047                                 T: (201) 585-7400
   F: (212) 428-6811                                 F: (201) 585-7422
   ndgrunfeld@katzmelinger.com                       seankwak@kcllawfirm.com
   *Attorneys for Plaintiff*                         *Attorneys for Defendants*

---

[1] The costs and expenses are as follows: $402.00 for the filing fee and $508.00 for process server costs, for a total of $910.00.